## JAMES E. CARPENTER *vs.* SAMUEL B. LEONARD.

In an action by the assignee of an insolvent debtor, in which he seeks to set aside a mortgage of land, as a preference, it is competent for the tenant, for the purpose of showing that he had no reason to believe the mortgagor to be insolvent, to prove representations made to him eighteen months before by the mortgagor as to his means and ability to carry on business, in reply to inquiries made by him prior to forming a partnership with the mortgagor, if coupled with proof that since then neither the firm nor the mortgagor has met with losses; but it is not competent to put in evidence the opinion of one who has examined the books and papers of the firm, and cast up the receipts and disbursements, having no means of knowing whether they were complete or correct except by information from the tenant, for the purpose of showing that there had been no loss in the business.

WRIT OF ENTRY by the assignee of Charles Leonard, an insolvent debtor, to recover possession of two lots of land in Foxborough, held by the tenant under a mortgage from the insolvent, dated April 12, 1858, and given and accepted, as the demandant alleged, for the purpose of securing a preference to the tenant.

At the trial in the superior court, it appeared that the first publication of notice in the insolvency proceedings was on the 19th of May 1858. The tenant testified that in October 1856 Charles Leonard solicited him to form a partnership, whereupon he inquired of Charles as to his means and ability to carry on the company business, and, upon his representations in reply, a partnership was formed between them. The tenant was then asked by his counsel what these representations by Charles were; and, objection being made, it was stated that evidence would be offered to show that there was no loss whatever in the partnership business, and that during the partnership Charles himself had met with no losses; but *Wilkinson*, J. excluded the evidence.

For the purpose of showing that the firm had not lost money in their business, a witness was called who testified that he had examined the books and papers of the partnership, (the books being put into the case) having no means of knowing whether they were complete or correct except information from the tenant, and had cast up the receipts and disbursements; and he

was then asked if there had been a gain or loss in the business·
but the evidence was excluded.

A verdict was returned for the demandant, and the tenant
alleged exceptions.

*E. Ames,* for the tenant.

*T. L. Wakefield & J. E. Carpenter,* for the demandant.

BIGELOW, C. J. One of the essential issues in the presen'
case was, whether the tenant, at the time he took the convey·
ance from the mortgagor, had reasonable cause to believe him
insolvent. As this inquiry necessarily involved an investigation
into the state of mind or belief of a party, any evidence was
competent which tended to show the existence of such facts or
circumstances as would naturally influence the mind of an hon-
est and reasonable man in forming a conclusion in relation to
the subject matter involved in the issue. It is on this ground
that the general reputation of persons as to credit and solvency
— evidence in its nature hearsay — has been held to be compe-
tent and admissible in the trial of cases, where the question of
reasonable cause to believe such person insolvent has been at
issue. *Lee* v. *Kilburn,* 3 Gray, 594. *Bartlett* v. *Decreet,* 4
Gray, 111. On the same ground, we think the statements made
by the mortgagor to his mortgagee in October 1856, concerning
his property and pecuniary condition, should have been admitted
in the present case. It is true that they were hearsay, and in
the trial of an ordinary issue would have been for that reason
incompetent. But they were declarations made directly to the
tenant, under circumstances calculated to impress his mind, at a
time when his attention was especially turned to the subject of
the mortgagor's pecuniary condition, and of such a nature that
they might properly affect the belief of any reasonable man con·
cerning the solvency of the mortgagor. They were made, too,
*ante litem motam,* not for the purpose of influencing the mind
of the tenant to induce him to take the mortgage, the validity
of which is now called in question, but to effect an entirely dif-
ferent object. Indeed, if it be competent to offer in evidence
the declarations and opinions of third persons concerning the
solvency and credit of a party, as has been decided in the cases

above cited, *a fortiori* it would seem to be proper to admit the declarations of the debtor himself, as having a tendency to create a reasonable belief in the mind of an honest and reasonable man that he was not insolvent. To the objection that the declarations offered in evidence were made long previous to the execution of the mortgage in question, and that therefore they were too remote to have any legitimate bearing on the issue before the jury, we think there is an obvious and decisive answer. The tenant did not rely on proof of the declarations alone. If he had, the objection would have been entitled to some weight. But he coupled his offer to prove the statements of the mortgagor in October 1856 with the additional fact, which he was also ready to prove, that the tenant had suffered no loss in his business from that date down to the time of the execution of the mortgage. He thus offered to make the connection direct and complete between the declarations made eighteen months previously and the execution and delivery of the mortgage on which he relied in support of his title.

The opinion of the witness as to the result of the copartnership business was rightly rejected. As it was made up in part on vouchers and papers of the correctness of which there was no proof except that derived from the statements of the tenant, they were clearly incompetent. *Exceptions sustained.*